Council are ready. All right let's call our second case this afternoon 16-14 12 Exby-Stolley v. Board of County Commissioners. Mr. Wysoki, you may proceed. Thank you, Your Honor. May it please the Court, Council. My name is Jason Wysoki. I Ms. Exby-Stolley. I'd like to start with what I believe we can all agree upon. First, we all agree the three basic elements of a disability discrimination claim are one, the person is disabled as defined by the ADA. Number two, they're qualified to perform the essential functions of their job with or without an accommodation. And number three, they suffered discrimination on the basis of a reasonable accommodation is required under the law absent an undue burden. And third, I think we can all agree that the core purpose of the ADA is to remove barriers so that disabled people can more fully participate in society. So the ADA is not just a remedial statute. It is designed to prevent discrimination in the first place by requiring employers to put forth reasonable accommodations. To prove that third element, that the person suffered discrimination on the basis of their disability, once you prove the discrimination, you have proven your case. You have made out your prima facie case. And proving that element, proving that discrimination in a failure to accommodate claim requires only that the person show that she was not reasonably accommodated. It does not require the additional adverse employment action. That's because the ADA requires employers to accommodate disabled persons. Period. Nothing in the ADA requires that the employee not be reasonably accommodated and be terminated or demoted before they can enforce that right of receiving an accommodation. By requiring an adverse employment action in a failure to accommodate case, this court would require that the disabled person suffer termination, demotion, or some significant deprivation of employment benefits before they can enforce their right to an accommodation. That turns the ADA on its head. In fact, this court decided in Smith v. Midland Brake that the promise of the ADA would ring hollow in a reassignment case if the reassignment was not required. Similarly here, if an adverse action is required before the employee can be accommodated, then the ADA's promise that disabled employees are able to participate fully in society and get accommodated would ring hollow. I think the text of the statute is instructive on this point. The words adverse employment action do not appear in the text. Certainly by the time the ADA amendments were passed, Congress was well versed with that phrase adverse employment action and could have easily chosen to include it in subsection A of the statute. It chose not to. Instead what it chose to do was to define discrimination in very specific terms. Not with the judicial shorthand of adverse employment action, but in very specific ways. And with regard to accommodation, discrimination occurs. Discrimination is defined as not providing a reasonable accommodation. Once the employee shows they were not reasonably accommodated, they have shown they were discriminated against, they have made out their prima facie case. That is what this court has held many times before and should so hold again. I welcome the panel's or the entire court's questions and I will duck for cover now. Great, so then I would look at another section. Let me, you keep, when you read the statute and you quote the statute, you stop at on the basis of disability and you skip over in regard to job application procedures, the hiring, advancement or discharge of employees, employee compensation, job training or other terms, conditions and privileges of employment. I mean that was the basis of the majority opinion that we're talking about here. So I don't, and it's in the expressed language of Congress, so I don't know how we get to ignore that. So if you plop in failure to accommodate, to take over, discriminate against a qualified individual on the basis of disability, you're still left with the in regard to language. How do you suggest we deal with that? Yes, well I, the way that the majority below or at the panel majority ruled was that the in regard to language is essentially the judicial shorthand of adverse employment action. And if you look at subsection B1 of the ADA, it's like 12.112.B1, that section itself says that discrimination includes segregating an employee, quote, in a way that adversely affects the opportunities, unquote, of that employee because of disability. So if we were to read the in regard to language as the same as adverse employment action, then that would render subsection B1 superfluous. That language would become redundant and repetitive, which is not the way that this court interprets statutes and its language. In addition, like I said earlier, in regard to is not the same as adverse employment action. Congress certainly had the ability to include adverse employment action as it did in subsection B1 of the statute in subsection B5 of the statute. It chose not to. And therefore I think this court can read that statute on its face in its plain terms to say that adverse employment action cannot be an element of a prima facie case for failure to accommodate because if it were, we are adding language to the statute that Congress not only knew about but specifically did not include in this statute. Following up on Judge McKee's point, you're not saying that a failure to accommodate does not have to relate to terms, conditions, and privileges of employment, right? Correct, Your Honor. And in fact, as the government points out, if you make the claim right, it necessarily relates to those things. Yes. And I think, hopefully not an absurd example, let's say a disabled employee is at the Rockies game or the Royals game on the weekend and they run into their boss. And the boss, because he's not a very nice guy, is sitting in the handicapped seat and doesn't give it up. Well, that wouldn't give rise to that employee bringing a failure to accommodate claim. It has nothing to do with the employment. It has nothing to do with the job. Instead, it's completely outside of the context of employment. But if that same boss and that same employee takes that disabled employee's parking spot, which then makes it much more difficult for the employee to get into their job, thereby they're late to work, they get reprimanded, then that would be a failure to accommodate that would allow the employee before they get demoted and fired because they aren't coming in on time due to having to park several hundred yards away, they'd be able to in this court should allow them to, bring an action to force that employer to uphold the promise of the law, which is to reasonably accommodate that employee before they're demoted or fired. And the promise of the law would be to be able to have equal opportunity or access, which means an equal shot to be able to do the job well, right? That's absolutely correct. That is the fundamental tenet that is the core of the ADA. Disabled persons as set forth in the statute in our society have long suffered much, much greater than others because of their physical disabilities. And so we as employers have to sometimes do more than we otherwise would to make sure that they have equal opportunities because getting to a job when you're in a wheelchair, for example, can be much more challenging than if you're able to ambulate like I can. Council, before you move on, can I just get you to address the language one more time? Do you read, and I'm paraphrasing your definition, and I just want you to say if this is right or wrong, everything that comes in regard to job application procedures, et cetera, as imposing a requirement that the action be related to employment? Yes. And that's all that says? That is, in fact, all it says. So it's just, I'm sorry, but just to differentiate from the baseball game to the parking place, the only difference is it has to be related to employment. That's correct. And there is some concern, perhaps, that this would create an avalanche of lawsuits. And suffice to say, I think that's completely incorrect. Save for a few lawyers who aren't very good at business like myself, the idea that you would have a lawsuit every day because somebody simply wasn't accommodated would mean that you would have lawyers lining up at the courtroom to resolve a case like Barty, where on remand the plaintiff recovered a case that was not accommodated. Again, that is not what is going to happen. Just like in this case, Ms. X. Bistoli did suffer discrimination in two forms. One, in the failure to accommodate, and two, in the termination and discharge. We were unable to argue below that this was a constructive discharge, and we believe that was error, and we have briefed that issue, and this Court has en banced the entire case and can address that issue. But the simple truth is that there are cases where the failure to accommodate has been essentially a standalone claim, and I think the Barty case is the perfect example for that. Is that a majority of the circuits, though, required an adverse employment action as an element to a claim? With all due respect, Your Honor, the answer to that is no. In a failure to accommodate claim, which is distinct and different from a disparate treatment claim, the vast majority, in fact, I would argue all circuits, do not require a separate adverse employment action. Except for the Ninth. And the Ninth Circuit is a bit of a mess, if I may be so bold. They have a state statute that reflects almost identical language to that of the ADA, and under their state statute, they do not require an adverse employment action. I recall that footnote from your brief, but I'm still scratching my head. What difference does it make what they do in state? I mean, the point is, as far as the ADA is concerned, they have it. You don't lose anything. One circuit. Sure. I would agree, Your Honor, that the Ninth Circuit seems to be an outlier in this instance, but I point that out because it seems that the application of the same language is inconsistent, depending if it's federal or state law. How do you establish the failure to accommodate in this case? It seems to me that one argument could be made, that it is the termination or the constructive termination that itself was the failure to accommodate. It could be considered for that purpose. Yes, that could be considered. Another example, Judge Lucero, is when... That makes no functional difference in the case at all, because it is perhaps a misstatement of the law, but with no effect. Is that what we have before us? No. What's the failure to accommodate before us? Certainly. Ms. X. B. Stolle was a food inspector, and due to her injury to her dominant arm, she was unable to complete her inspections as quickly as the county would have liked. And so she asked for accommodations, for example, to perform different types of inspections. So her group encompassed not just restaurants, but also tattoo parlors, pools, things of that nature. And doing the tattoo parlors, for example, although there are fewer of them than there are restaurants, although sometimes you drive down Colfax and you don't think so... Asked for that, and what happened? They basically said, no, we can't reshuffle who does what with the different types of businesses. She also asked to be able to do more of the paperwork. Denied the request. That's exactly right. She was denied the request. In fact, when she first raised the issue of accommodations, her boss, as admitted by the HR director of Weld County at trial, incorrectly stated the law and said, we cannot accommodate you until you get a doctor's note saying we need to accommodate you. That was perhaps the most glaring example of the county's failure to accommodate that created a cascade of bad results for Ms. XB Stolle and set up a catch-22 out of which she could not disentangle herself. Because she was told, you've got to go to a doctor and you've got to get recommended for an accommodation. So the doctor says, well, here you go, Ms. XB Stolle, you have now a note from me that says you can't lift 15 pounds, you can't do this, you can't do that. Well, now she, according to the county, can't do the essential functions of the job. And so now she gets relegated, as she put it, like being put in a closet doing halftime work while her replacement literally is hired to do her job. So I don't think there is any risk that there is going to be a lot of cases, an avalanche of cases here. I think the standing alone requirements would preclude that. Counsel, the parties seem to disagree on how to read the religious accommodation cases, how those cases may apply to the issue we have here. If the religious accommodations could correctly be read, and I know you don't agree with this, but if they could correctly be read as requiring proof of an adverse employment action, what impact should that have on how we look at your case? Sure. Well, I believe there's two answers to that. One, as you pointed out, Judge Matheson, I don't agree with the premise. The religious accommodation claims, going back to the TWA case in 1977 where the U.S. Supreme Court said, based on the definition of religion, an employer has to accommodate. And the subsequent case law that the employer has to accommodate the religion without an adverse employment action. But even if you were to assume that an adverse employment action was required under a Title VII religious accommodation claim, the difference here is that the ADA is specifically written to require accommodation and defines accommodation as discrimination. There is no such similar language in Title VII. It's been interpreted that way based on the definition of religion in Title VII. But here we have a statutory difference. We have a very distinct provision that was purposely written by Congress to define discrimination in several ways, one of which is you don't accommodate, you discriminate at the risk of being a little Johnny Cochranesh. And that is the end of the inquiry. Once you discriminate, that's a prima facie case. That has to proceed to a jury, and the jury then decides whether or not the person wins or loses and whether or not they get compensated, depending on what type of compensation or damages are being sought. But as we see in the Barty case, even with just a failure to accommodate claim and not a termination or disparate treatment claim, the plaintiff can recover, although that recovery is by no means a king's ransom. In that case, the point of that case said that the retaliation, the anti-retaliation provision in Title VII has to be interpreted broadly. Because if you don't do that, then the entire purpose of Title VII, which is to prevent discrimination in the first place, the person can't enforce that in regard to language narrowly to require an adverse employment action, then what's going to happen is you're going to require disabled persons to be terminated or otherwise treated very poorly before they can even bring a claim. By allowing disabled people to bring a claim for failure to frankly primary purpose of removing barriers to employment, many of those barriers sometimes are actual physical barriers. I also think that some clarification can be brought to bear with some of the case law that has relied extensively on the Foster case out of the Seventh Circuit. Frankly, Foster is just simply not good law. And not only do the Seventh Circuit pattern jury instructions, which effectively codify the Seventh Circuit's elements for a failure to accommodate Do not. You relied on the UJI. When that was promulgated, it stated the Tenth Circuit had allowed it to be promulgated, but was not approving the instruction. Isn't that correct? Correct, Your Honor. So that is, okay, you treated it as if it were a ruling by the Tenth Circuit, and I think it's important to know that. Yeah, no, not by the Tenth Circuit, but I think in the Seventh Circuit. In the Tenth Circuit, in the Seventh Circuit. Yes, it is not an actual codification. But the other thing I would point this court to with regard to Foster is the judge that wrote Foster, Judge Mannion, I believe is how you pronounce his name, later signed on to the unanimous decision in the AutoZone case, in which the court remanded and specifically instructed the court not to apply an adverse employment action element in a failure to accommodate claim. So there you have the judge in Foster who arguably said adverse employment action is an element of a about 15 years later, essentially reversing himself and saying, nope, not necessary anymore, because the law had evolved. So any case that relies on Foster for its fundamental premise of an adverse employment action, I think can easily be distinguished at the very least by this court. Let me ask you this. In the Title VII area, where you don't have to have someone actually fired or not given a job, they might be able to make a claim for a hostile work environment. Do we have, is this parallel to that in the ADA area? Is there any requirement of a showing of pervasiveness or severity on the part of the petitioner of the plaintiff here? Or is it just any time the plaintiff alleges you failed to accommodate me, you go to a jury? With regard to a failure to accommodate claim, no, it does not have to be pervasive. But there are, the ADA obviously does allow... Does it have to be severe? No, it doesn't. What it has to do is it has to impact the ability... Let me give you a hypothetical. You've used in the briefs somebody who has a physical disability and they want to park in the closest space to the entrance to the building. You give them the second closest or the third closest. Can they bring a failure to accommodate claim under your theory? Or does it require some level of severity? Well, in that hypothetical, Your Honor, I would basically say no, they couldn't because a reasonable accommodation would be the next space over. Where you get into an area of whether or not the interactive process is going to come up with a good, reasonable accommodation is if it's not the next space or the third space, it's two, three, four hundred yards away. As the Hill case out of the D.C. Circuit talks about, that was a case in which there was a teacher with one leg. And the court in that case said, you do not enjoy the equal benefits of employment if you have to go through your daily routine in severe pain. And so while he could do his job, he could teach, he could stand there, he could monitor recess, he was in pain. His stump, I believe is what they actually call it in the opinion, would get bruised and he would be in pain. Don't the EEOC regulations specifically say it can't relate to convenience issues? Yes, and the case law is legion on that as well, Your Honor. And beyond that, it has to relate to the essential functions of the job, right? Well, yes. And what the regulations 29 CFR 1630 say is that you have basically three ways that a reasonable accommodation applies. Number one, modifications for an applicant so they can apply. Number two, modifications for the employees so they can perform the essential functions. And number three, modifications for an employee so they can enjoy the equal benefits and privileges. And in the Hill case, which Sanchez versus Vilsack also adopted the same CFR, said, yes, when you don't have the same, you're not able to enjoy the equal benefits of your employment, then the reasonable accommodation right has been trampled upon. I would like to reserve a couple minutes for rebuttal, if that's okay. You may. Thank you, Mr. Wysoki. We have the Department of Labor on the side of the petitioner. So let's hear next from Ms. Baldwin. And her argument is five minutes. We waive the five-minute intro requirement. You have 10 minutes? I'm sorry. I'll give you two minutes of uninterrupted intro, and then the court may ask questions. Is that okay? Thank you, Your Honor. You may proceed. Good afternoon, and may it please the court. Anna Baldwin, on behalf of the United States, the Department of Justice, and EEOC, as amicus in support of the appellant. Title I of the ADA exists in order to guarantee and create enforceable requirements so that people with disabilities are afforded full and equal opportunity to participate in the workplace and to secure their own economic independence. The centerpiece of Title I's mandate to eliminate unfair workplace discrimination on the basis of disability is its reasonable accommodation requirement. The jury instructions in this case, specifically jury instructions 16 and 23, would significantly undermine the effectiveness of that centerpiece requirement in that those instructions essentially give employees no enforceable reasonable accommodation obligation unless or until they have already been demoted or forced out of the workplace. In a Title I reasonable accommodation case, there is no adverse employment action requirement as defined by the district court here. To be sure, in order to be actionable, all discrimination claims brought under Title I of the ADA have to pertain to the plaintiff's terms, conditions, and privileges of employment. I'm sorry. You pull your microphone up a little bit. Yes, Your Honor. Mm-hmm. That requirement flows from the text of 12.111.2a. So all forms of discrimination banned under Title I, whether it's a disparate treatment claim, a disparate impact claim, or a failure to accommodate, have to be in regard to the individual's terms, conditions, or privileges of employment. But the central point that the district court's instructions got wrong here is that there can be an unlawful failure to accommodate that regards a plaintiff's privileges of employment that nonetheless doesn't result in a significant change in employment status or significant change in benefits. Let me. I think I agree with almost everything in your brief. So I'd like to go through that and see if I'm understanding what you're saying correctly. Certainly. So you just said, as I understood it, and you said it in the brief, that to prevail on failure to accommodate claim, a plaintiff must prove she was discriminated against because her employer failed to provide a reasonable accommodation that relates to the terms, conditions, and privileges of her employment. You agree with that? Yes, Your Honor. And that's essentially the same requirement with respect to terms and conditions of employment as for Title VII discrimination claims. Is that correct? You said in your brief that it's nearly identical language. To be clear, the statutory test, the terms, conditions, and privileges is identical between Title I and between Title VII. Now, I think in talking about Title I, it's important to keep in mind that this is an affirmative obligation, which differentiates it somewhat from Title VII. And the scope of the obligation is really clearly defined in Title I because you have the definition of a reasonable accommodation in the statute, that it's to do things like to modify your work schedule, your job assignments, the kind of equipment that you have. That affirmative obligation isn't by its nature in the kind of realm of ultimate employment decisions. And then you have the EEOC implementing regulation that says, here are the discrete scenarios in which you're required to make those modifications. The regulations might change. Let's focus on the statute. Sure. But that's the, you spoke of that as nearly identical language in your brief. You described it as nearly identical language to that in Title VII. Did you not? Yes, Your Honor. And in addition, you criticized, perhaps correctly, some of our decisions under Title VII, saying we had in Title VII cases have gone beyond terms, conditions, and privileges of employment in our adverse employment instruction, adverse employment action instruction in those cases also. Is that correct? Yes, Your Honor. And so just first on the regulation, I just want to say it is entitled to Chevron deference. It's a notice and comment regulation. But on the statutory issue, so the statutory language is identical in terms of terms, conditions, and privileges. And so I think what's relevant here is that there's been a body of case law around adverse employment action as a judicial shorthand. And if the jury instructions were- Shorthand for what? For terms, conditions, and privileges. You agree that that's how courts have used that. That's when the courts have used the term adverse employment action, they're really just using the shorthand for terms, conditions, privileges of employment. You agree with that, as Judge Posner said, and a lot of other courts- I think it's in practice, it's become a narrowing of terms, conditions, and privileges. And just yesterday, in fact- They may be getting it wrong. They may be misconstruing what terms, conditions, and privileges of employment are. But that's the statutory language they're referring to and basing the adverse employment action requirement on. Is that correct? I think it's fair to say that's the intention. But as one could see in the Title VII context, for example, this court would say under Title VII that a lateral transfer that's denied on the basis of race or sex may not be actionable. But under Title I, the court also has case law Sanchez v. Vilsack under- that's the Rehab Act, which applies the same standards as Title I, that says it could be a reasonable accommodation to give an employee with a disability a different location. And I think it's correctly applied in Sanchez v. Vilsack, and it may be inappropriately narrowed in Title VII. I'm sorry, go ahead, Judge. May I have a moment? Sure. So your complaint is not with so much- in fact, I think you say this in your brief- with the use of the term adverse employment action. Your problem is with the definition of adverse employment action in the instructions to the jury. Given that instruction, if it had been a proper construction of, quote, terms, conditions, privileges, and employment, that would not have been erroneous. Is that correct? I think that's possible, Your Honor, and certainly a district court has wide discretion. I think that the adverse employment action standard, because as it's developed in Title VII, has become its sort of nomenclature unto itself. And even in the panel opinion, you can see there are different Title VII opinions cited that would disagree about, you know, taking away supervisory responsibilities. That is an adverse employment action. It's not clarifying in the Title I context to simply import that language. It's much better to focus on the terms of the statute, terms, conditions, and privileges, and to say if the jury had been instructed here that all the plaintiff needs to have shown- When you say it's not clarifying, it is typical in non-failure-to-accommodate cases under Title I for courts to use the term adverse employment action and give an instruction defining adverse employment action. You agree? Certainly in a wrongful termination case, that's going to be at issue. In a failure-to-accommodate case- It's the same language. The statutory language is identical in Title I, in 12112A, is that right? Right. Whether it's a failure-to-accommodate or another form of discrimination. And the Supreme Court, all it has said about that identical statutory language in Burlington Northern, when it's said in the context of Title I, Title VII, excuse me, substantive anti-discrimination provision, is that terms, conditions, and privileges, actions that affect that term, mean an action that affects employment or alters the conditions of the workplace. And in this case, that definition of terms, conditions, and employment, an action that affects employment or alters conditions of the workplace, is substantially broader than the jury instructions given here. So you would, so if we're using that same instruction in other Title I cases, you would say that instruction is incorrect in those cases also? I don't think the court has to decide that. I think obviously- Is there any principled way, the case that you was it? No. That language is more lenient for the, it's more favorable to the employee than our instruction on adverse employment action that we have for all Title I and Title VII cases. Isn't that correct? Correct. And in Meritor Savings Bank also, I mean, the court, again, focusing on what is the, what does terms, conditions, and privileges mean, the court said that language is broad and it's meant to strike at the entire spectrum of adverse employment actions. And it's not just limited to things that cause tangible or economic harm. I just want to- Could you finish what you were going to say about the instruction, what would have been an okay definition here? And is it the Burlington Northern Title VII case that was a post-termination retaliatory discharge type thing? Or not, was retaliation post-termination, but are you suggesting that that language would have been okay here? In Burlington Northern- Could you describe terms and conditions and privileges? Terms, conditions, and privileges, if the instruction had said, does the failure to accommodate affect the plaintiff's conditions of employment or alter the conditions of the workplace, that would have been acceptable. The instruction that plaintiff asked for saying, if the failure to accommodate is a failure that, to reasonably accommodate with regard to essential job functions, that certainly would have been acceptable. There are a wide range of instructions that could have been acceptable and focused on the statutory language. Just on an earlier question about pervasiveness and tangible harms, I think it's important in Burlington, North Burlington Industries v. Ellerth, there's been some feed over from the Supreme Court in that case using, you know, you have to have a tangible harm. The court in that case was really looking at what kind of harm do you have to have to apply principles of vicarious liability to the employer. So when you have a sexual harassment case, what do you have to have in order to know that the employer's been put on notice? And there you have to have that kind of ultimate or tangible employment action just under traditional agency principles. The court wasn't interpreting the terms, conditions, and privileges language in Ellerth, and I think that's clear from the later decision in White. All right, counsel, I think your time's expired. I appreciate the argument. Let's hear from the county next, and representing the board is Mr. Epstein. Thank you. May I please the court? Counsel Alan Epstein on behalf of the Board of County Commissioners. Counsel, you want to pull your microphone down? Thank you. I'm sorry, representing the Board of County Commissioners of Weld County. The issue this court directed the parties to address is whether an adverse employment action is a requisite element of a failure to accommodate claim under the Americans with Disabilities Act. Weld County submits the answer is yes, primarily for the reasons articulated by the majority in the original panel which heard this case. First, Weld County submits that the majority opinion correctly noted that there was no, there is no prior Tenth Circuit opinion that has affirmatively held that adverse employment action is not an element of a failure to accommodate claim. The issue simply was not raised by any party to a Tenth Circuit appeal until this case. Either it was undisputed that there was an adverse employment action in those cases, so the issue did not come up, or the plaintiff failed to establish some element, other element of a failure to accommodate. Or it was undisputed that an adverse employment action is not an element of a failure to accommodate case, which is why it didn't come up. And if you look at those cases, including Smith, which specifically gives a detail of what a prima facie case is in a failure to accommodate case, it does not include an adverse employment action case, which leads one to wonder what are we doing in all of these cases when we purport to be giving the prima facie case if we aren't giving the prima facie case. So tell us, what do you do with that? Well, I would suggest that the language that's used in those opinions does not work to articulate every element of a reasonable accommodation claim. It doesn't in Smith? What else is Smith doing if it's not doing that? As the majorities articulated, I believe it was giving the parameters of the claim generally, but not specifically stating each and every element of the claim. I don't think any case has done that until this case. And in fact, this case, both the majority opinion and the dissenting opinion, went into far greater depth in analyzing this issue than any other case that I've read on this issue. And I understand in EEOC v. C.R. England, the court held that in order to demonstrate discrimination under the ADA, a plaintiff must show that she suffered an adverse employment action because of her disability. I understand that that articulation was stated not in the failure to accommodate section of the opinion, but the C.R.E. England decision does not explicitly distinguish between different types of ADA claims. I would also submit that the majority also correctly interpreted the statutory language to require that a failure to accommodate claim include an adverse employment action element. The ADA precludes employers from discriminating against an individual on the basis of disability in regard to job application procedures, other job related activities, and other terms, conditions, and privileges of employment. Title VII of the Civil Rights Act employs similar language in prohibiting employers from discriminating on the basis of race, color, sex, religion, or national origin with respect to a person's compensation terms, conditions, or privileges of employment. And this terminology has been held in numerous cases, identified in the majority opinion as shorthand for adverse employment action. The majority- I failed to understand one aspect of your case. First, Judge Hartz tells us he agrees with everything in the government's brief. Where does that leave you? I thought that Judge Hartz's questions were maybe more nuanced, that the terminology- He would like that. Should I explain that, Sam? One second. All joking aside, I'd like to understand one way of how you would have the system work. If you have to have an adverse employment action as a precondition to providing the protections of the duty to accommodate, aren't you basically destroying the very purpose of the duty to accommodate? Because the duty to accommodate was initially instituted under the legislation to afford handicapped persons the right to compete equally by affording accommodation in the competitive process. But you're saying that as a condition to triggering those benefits of the statute, that you have to have an adverse employment action. I don't understand how that works under the way the system as you would have us read it, or as a majority would have us read it. As a practical matter, in almost every case, the failure to accommodate will result in some it doesn't. But I think that the majority's reading of the statutory construct of section 12112 and the sentence structure, it's correct- But adverse employment action normally means like termination, demotion, actions that have an economic consequence, correct? I'm sorry, I didn't hear the first- That adverse employment action normally means a termination or a demotion such that has an economic consequence to the employee. Yes. But the duty to accommodate is intended to protect against that very circumstance. And that's why I say I don't understand how you would have the statute work if you're going to require an the protections of accommodation. I would argue that that is how the statute reads. And I'd also, I would also argue that the ADA failure to accommodate requirement is analogous to a title 742 USC section 2000 E subsection J of failure to accommodate on the basis of religion corollary to the ADA failure to accommodate provision. And in the supplemental briefing in this case, the parties, the plaintiff argued that adverse employment action is not an element of the title 7 failure to accommodate on the claim. And we submit that that is not so. Well, let's assume that you're right. What difference does it make? Title 7 does not have a separate discrete provision that addresses failure to accommodate that provides an affirmative obligation to provide a reasonable accommodation. Title 7 doesn't have that. So you've got to, it has to be in one rubric or another. It has to be disparate impact or disparate treatment. So let's assume it's disparate treatment and there's an adverse employment action requirement. So what? Well, if I'm reading, if I'm reading title seven correctly, that the subsection J states the term religion includes all aspects of religious observance and practice as well as belief, unless the employer demonstrates that he is unable to reasonably accommodate to an employee perspective employee or prospective employees religious observance or practice without undue hardship on the conduct of the employer's business. My reading of that provision is that it is this, this has the same elements of an ADA claim for failure to accommodate, but on the basis of religion. It's defining religion though, is that not right? Yes. And that as opposed to defining what discrimination is, which is under the ADA. Yes. In the, in EEOCV console energy, which is cited in defendant supplemental brief, the fourth circuit held that to show a violation of the reasonable accommodation duty in the context of the title seven religious discrimination claim, the employee must prove that he or she has a bona fide religious belief that conflicts with an employment requirement. He or she informed the employer of this belief and he or she was disciplined for failure to comply with the conflicting employment requirement. The fourth circuit then stated in, in that decision, and this citation is at eight 60 federal third at page one 43 console also argues that the EEOC failed to establish the third element of a failure to accommodate claim that the plaintiff suffered some adverse employment action, excuse me, as a result of his failure to comply with other federal circuit, federal district court decisions, such as ICI, the American university have employed similar tests and religious discrimination failure to accommodate cases. And, and this court endorsed a similar test to demonstrate a religious discrimination claim of failure to accommodate in Thomas V national association of letter carriers, which is also cited in defendant's supplemental brief. And this court held that to establish a prima facie case, the employee must show he or she has had a bona fide religious belief that conflicts with an employment requirement. He or she informed his employer of this belief and he or she was fired for failure to comply with the conflicting employment requirement. Not that the employer failed, not that the employer, the third prong of the test was not that the employer failed to accommodate. It was that there was an adverse employment action taken. And, and again, I, to me, subsection J, which speaks in terms of the employer, unless the employer, the employer demonstrates that he is unable to reasonably accommodate to my reading, that is analogous to the ADA failure to accommodate requirement. Well, let me ask you something. So you, you do agree with judge Holmes that there's an affirmative duty to accommodate persons with disabilities, right? Yes. Okay. So if, and if you won't accommodate that, what's relief is available to them under your position? Say, say they can't, they're having trouble, they need an accommodation and you just ignore it, but you don't take any action against them. What's their, what's their relief? Resignation. In, we obviously have a difference of, of opinion in this case about the factual circumstances of the plaintiffs. Well, let's, let's say they, they have to resign because of it. Is that, I mean, that's constructive discharge, right? Not necessarily. It's not necessarily. There, there is a case cited in our supplemental brief and in the defendant's initial brief that, and I don't have it in front of me, that holds that, that that is not sufficient in and of itself to constitute constructive discharge. I mean, my concern is, is that there's no way to effectuate the congressional intent under your position because somebody needs an accommodation. They request an accommodation. You just do nothing. They don't get it and they have to, they have to quit, but they have no relief. Well, I would argue that that's, that is what the, what the statute says and that is what a number of other circuits have held. I believe not just the Ninth Circuit, but the Eighth Circuit in Finney v. Dakota, Minnesota and Railroad Company case and the Second Circuit in Parker v. Sony Pictures. So you force, I'm sorry, you force the constructive discharge and then you argue it's not a constructive discharge. That's the only way. And then you're going to make a new argument. Well, constructive, constructive discharge has been defined by this court as when an employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employer's, employee's position would feel compelled to resign. The employee must allege facts sufficient to show that a reasonable person in her position would have found the working conditions intolerable. Whether that was met here, I don't believe it was under the circumstances of this case as reflected in the trial transcript. Let me ask you, the failure to accommodate must be with respect to the terms and conditions of employment, correct? Yes. And what the government is arguing here is that instruction in this case had a much too narrow interpretation of what it meant to be related to the terms and conditions of employment. But it still has to be related to the terms and conditions of employment, does it not? Yes. And it's up to the court to decide whether, how to interpret that language, how to construe it so that it's not just a convenience. I think the government agreed in their regulations, well, regulations relate to a different point, but essentially it can't just be related to some convenience of employment. It's got to be failure to accommodate circumstance. That could be pretty broad because if, for example, the employer fails to do something to reduce significant pain that the employee is experiencing because of a failure to accommodate, the employee can still do the job, but there's great pain. Then wouldn't you say that then the failure to accommodate relates to a term and condition of employment, not relieving the person of the great pain? Would that not relate to the terms and conditions of employment? It would be, but as the majority opinion articulated in its decision, terms, conditions of employment has been interpreted as shorthand in other cases to adverse employment action. Yes, but we didn't address the instruction on adverse employment action, the definition of adverse employment action. That issue was not before us. That was not argued. The only argument made was there's not any additional element involved. I don't think we were endorsing, I don't think you'll find any language in that opinion, endorsing the instruction of adverse employment action that the government finds to be problematic here. The instruction that was given in the trial? Yes. That was not raised on appeal, whether that instruction was adequate or not. That part of the instruction was not raised on appeal. What they were challenging was the elements instruction, which included adverse employment action as an element. Then there was a later instruction that defined adverse employment action, and whether that was off base or not, I can't fault the judge because that was their, that's the traditional instruction, but the government in its brief challenges some of our precedents on how that term adverse employment action should be interpreted, saying it's straight away from the statutory language. But that's a different issue from what was presented on our appeal, at least before the panel. Is that correct? Yes, that's correct. That part of the instruction was not identified as a separate issue of error on appeal. Well, adverse employment action can exist in a vacuum. They're challenging the existence of adverse employment action, and adverse employment action has to mean something, right? Yes. Okay. Well, there was a definition for what it meant in the instructions, right? There was. They're not challenging that. I'm sorry. And there is no doubt that that, why wouldn't that definition control what adverse employment action means? They're challenging the requirement of an adverse employment action. The instruction tells you what an adverse employment action means. Yes, that's true. Let me give you, following up on a point that Judge Carson made earlier, I was trying to come up with a good hypothetical to get at this, and let me give you this one. Would you accept the premise that this statute protects privileges and benefits of employment? Yes. Okay. Let's assume I'm going to hire a blind law clerk. That blind law clerk, my standard is to get out, every law clerk has to get a certain number of month to be a good law clerk, okay? To get the privilege of being a good law clerk, to have that status. Okay. Well, my blind law clerk tells me this. I can make it work that I will be able to get out, let's say it's three. I can get out two, but I can't get out three. But Judge Holmes, I want to be a good law clerk. I want to be the best law clerk I can be. I want to fulfill my potential in this job. All I need is a reader. And I tell her, no, you can't have a reader. I'm not going to fire you. You're great. You do the work you do is great, but no, I don't need you to have a reader. That's just going to be too expensive. So you just go through and you get your two out and that'll be fine. Well, I have impaired her potential. Unless the increased expense that you referred to would be considered an undue hardship. Unless it's an undue burden, but let's assume it's not an undue burden, then I have not allowed her to fulfill her potential in that job, have I? I agree. And the statute protects exactly against that phenomenon, doesn't it? It does. Counsel, let me back up a little bit on putting aside the analogy to Title VII. And I realize that there is an argument importing the meaning of adverse employment action from Title VII. But if you just simply look at 12112A and 2112B5A, it took me a couple of times to do that. So this textually, the plaintiff is unquestionably right, isn't it? Because 12112A is neutral in regard to terms, conditions, and privileges of employment. In other words, taking the majority opinion, if there is discrimination and you're parsing grammatically that sentence, then you have that it has to relate to or be in regard to terms, conditions, and privileges of employment. And then for a fear to accommodate, you look at B5A in the test as if the failure would impose an undue hardship on the operation of the business of such covered entity by definition that is in regard to the conditions, terms, and privileges of employment. So just textually, putting aside the analogy to Title VII, if we just look at the text of these two provisions, aren't we compelled just by grammar to say that the plaintiff's interpretation is correct? Well, except that subsection A does not but could have actually used the terminology, not making reasonable accommodations, and as the majority analyzed this grammatical construct, it would have to have done so in order for there not to be the requirement in that employment action. But by definition, if there is a fear to accommodate that relates to the operation of the business of such covered entity, by definition that will always be in regard to the terms, conditions, and privileges of employment, correct? I'm sorry. I didn't hear the first part. If you set aside B5A that it relates to the business of such covered entity, by definition that will always be discrimination in regard to the terms, conditions, and privileges of employment, right? In other words, a B5A violation would always, by definition, satisfy the in regard to clause in A, right? It doesn't use that language. I'm not sure that you can correlate the two simply because B5A does not use the terminology terms, conditions, and privileges of employment. And I see I have nine seconds left. Mr. Epstein, we appreciate your argument. Mr. Wysoki, you had a few minutes for rebuttal, if you wish. I want to ask you a quick question before you get started. Please, and then I'll leave you alone. The government brought up the idea that we owed Chevron deference to their regulations. You didn't raise that yourself, did you? I did not raise that whether or not the county's regulations are the right ones or prejudicial or discriminatory themselves, no. OK, so from you, there's no Chevron claim here? No. OK, thanks. Did you say county's regulation? Sorry, not the county's. Yeah, sorry. I have the county on my mind. Sorry, I'm looking at my notes. I think, yes, I thought I heard somebody. What I think Judge Carson, Judge Moritz, you raised with counsel for the Applea is exactly right. Effectively, what the majority's opinion sets up is a game of chicken between the employer and the employee. And if the employer simply says, I'm not going to accommodate you. Let's see what happens. Then the employee is stuck in a catch-22. They either tough it out, they're in pain, they don't perform, whatever it is. And then, at best, they quit. And then they're stuck with a constructive discharge claim, which this court knows is not an easy claim to make. And so instead of having a claim that is very clear on the face of the statute, the plaintiff is stuck with a much, much harder claim to prove. And now they're out of a job. They don't have the money to pay a lawyer. They don't have the means to provide for their family because they had to quit because they were in so much pain or such distress. And that's not what this statute is intended to do. There was also a question about the instruction on adverse employment action. We did raise that as an error. We did propose, as Instruction 11, which is at Appellant Appendix Volume 2, Page 403, sort of, we were scrambling, obviously, with what was going on. But we did try and include, within the definition of adverse employment action, the failure to accommodate. Now, I don't think that's sufficient. I don't think that's what the law requires. But that definition was challenged on appeal and in the district court itself. And with regard to the Eighth Circuit, I would say that, look at the Eighth Circuit pattern jury instructions. They do not require adverse employment action. Thank you, Mr. Wysoki. Your time has expired also. Counsel are excused and the case shall be submitted. And the court will be in recess until tomorrow morning at 9.